UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |  |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 08-32911 (LMW) |
|  | ) |  |  |
| HERMAN JAN VAN ECK, | ) | CHAPTER | 11 |
|  | ) |  |  |
| DEBTOR. | ) | DOC. I.D. NOS. | 242, 298, 299 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### APPEARANCES

| | |
|---|---|
| Kim L. McCabe, Esq.<br>Assistant United States Trustee<br>Office of the United States Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT 06510 | Attorney for Movant United States Trustee |
| Herman Jan Van Eck<br>P. O. Box 16<br>Ivoryton, CT  06442 | Respondent Chapter 11 Debtor in<br> Possession (*Pro Se*)[1] |
| Linda J. St. Pierre, Esq.<br>Benjamin T. Staskiewicz, Esq.<br>Hunt, Leibert & Jacobson, P.C.<br>50 Weston Street<br>Hartford, CT  06120 | Attorneys for DLJ Mortgage Capital, Inc. |

### MEMORANDUM OF DECISION AND ORDER RE:
### DISMISSAL WITH PREJUDICE AND RETENTION OF JURISDICTION

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

Before the court is the United States Trustee's (the "UST") motion to dismiss this chapter 11

case (Doc. I.D. No. 242, as supplemented by Doc. I.D. No. 299, the "Motion To Dismiss").  This

---

[1]     Based upon its observation of the above-captioned debtor (the "Debtor") in this case, the court has found the Debtor to be a sophisticated *pro se* party who knows his way around the court.

court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and

1334(b) and that certain order dated September 21, 1984 of the District Court (Daly, J.).[2]  This

memorandum constitutes the findings of fact and conclusions of law to the extent mandated by Rule

9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

## I.    FACTS AND PROCEDURAL BACKGROUND[3]

On September 5, 2008 (the "Petition Date"), the Debtor commenced the instant bankruptcy

case by the filing of a chapter 11 petition *pro se*.  Subsequently, the Debtor filed his statements and

schedules (*see* Doc. I.D. Nos. 17, 19, 20, as amended by Doc. I.D. No. 75, the "Schedules").

The UST's Motion To Dismiss came on for an evidentiary hearing (the "Hearing") on March

2, 2010.  At the Hearing, the Debtor testified in opposition to the Motion To Dismiss and was cross

examined by counsel for the UST and counsel for GRP Loan, LLC's ("GRP").[4]  The UST also

---

[2]    That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . . "

[3]    Facts set forth below have been taken from the entire record of this chapter 11 case and certain prior cases in respect of the Debtor.  Additional facts will be stated in each section as they become relevant to the subject discussion.

[4]    At the Hearing, the court also took evidence on that certain Motion To Substitute Party Plaintiff (Doc. I.D. No. 220, the "Motion To Substitute") that was filed by DLJ Mortgage Capital Inc. ("DLJ").  By that motion, DLJ, the alleged assignee of the subject loan documents, sought to be substituted herein with respect to pleadings filed by GRP.  In light of the conclusions reached by the court below, the Motion To Substitute is deemed moot.  Except to the extent specifically indicated below, the court has not considered the arguments of GRP and/or DLJ. Nothing herein, or the order issued in connection herewith, prejudices or impairs or will prejudice or impair DLJ's right to seek to establish its standing to enforce the subject loan documents in any court of competent jurisdiction.

introduced documents which were admitted as full exhibits at the Hearing.[5] At the conclusion of the

Hearing, in addition to the Motion To Dismiss, the court took the following matters (the "Matters")

under advisement:

- GRP's Motion for In Rem Relief from Stay With Prejudice (Doc. I.D. No. 24, the "Lift Stay Motion")

- Debtor's Objection to Doc. I.D. No. 24 (Doc. I.D. No. 84)

- GRP's Motion To Dismiss Chapter 11 Case or in the Alternative Convert to Chapter 7 Case With Prejudice (Doc. I.D. No. 164, "GRP's Motion To Dismiss")[6]

- Debtor's Objection to GRP's Motion To Dismiss (Doc. I.D. No. 170)

- DLJ's Motion To Substitute Party Plaintiff (i.e., the Motion To Substitute)

- UST's Motion To Dismiss

- Debtor's Objection to the UST's Motion To Dismiss (Doc. I.D. No. 298, the "Objection")[7]

---

[5]    The UST also presented a binder of documents filed in either this bankruptcy case or the pending bankruptcy case of Gertrude Joan Van Eck (Case No. 05-31239 (ASD)), the Debtor's late mother.  The binder was presented for the convenience of the court and the court took judicial notice of the documents contained therein without objection.

[6]    Counsel for GRP argued in support of GRP's Motion To Dismiss at a prior hearing held on January 28, 2010.  The court continued that hearing to the Hearing date to deal with "matters that remain unresolved with respect to the . . . [Motion To Substitute]."  (Doc. I.D. No. 256 (1/28/10 Hearing Transcript) at 80:24-25.)  Counsel for GRP appeared at the Hearing and (among other things) reiterated her position in respect of GRP's Motion To Dismiss.

[7]    Additional matters (the "Other Matters") also were scheduled for the date of the Hearing.  Those matters, however, were continued to a date to be announced ("TBA").  Reference to the oral record of the Hearing is cited as follows: "Oral Record at _____."

The Motion To Dismiss now is ripe for decision.[8]

## II.   SECTION 1112(b) "CAUSE"

### A.   General Law

11 U.S.C. § 1112 governs conversion and dismissal of chapter 11 cases and states in relevant

part as follows:

(b)(1) Except as provided in paragraph (2) of this subsection . . . , on request of a party in interest, . . . absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

(2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that–

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title  . . .; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)–

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

---

[8]      The court has determined that the most expeditious method of resolving the Matters would be to address the sufficiency of the UST's Motion To Dismiss.  Therefore, the ruling made in this memorandum is primarily in respect of the Motion To Dismiss.  However, while the court does not specifically rule on GRP's Motion To Dismiss, it does make reference to that Motion and specifically addresses (*sua sponte*) the request for prejudice made in that Motion and the request for *in rem* relief made in GRP's Lift Stay Motion.  That request for *in rem* relief was repeated by GRP's attorney at oral argument on January 28, 2010 and at the Hearing in connection with GRP's Motion To Dismiss and the court also addresses that issue below (*sua sponte*).

. . .

(4) For purposes of this subsection, the term "cause" includes–

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> . . .
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public . . . .

11 U.S.C. § 1112(b) (West 2010) (emphasis added).  Thus, with limited exceptions, Section 1112(b) mandates that the court dismiss or convert a chapter 11 case where "cause" exists within the purview of Section 1112(b)(1).  *See In re Emergystat of Sulligent, Inc.*, No. 07-51394, 2008 WL 597613, at *5-6 (Bankr. E.D. Tenn.  Feb. 29, 2008); *Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007); *In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006).

There are two exceptions to mandatory conversion or dismissal.  Those exceptions are found in Section 1112(b) and are:  Section 1112(b)(1) ("unusual circumstances") and Section 1112(b)(2) (which operates to enable a debtor to avoid dismissal or conversion even in the absence of "unusual circumstances" where the debtor shows that there is "reasonable justification" for the deficiencies in the case, those deficiencies "will be cured within a reasonable period of time," and there is a reasonable likelihood that the debtor will confirm a plan within a reasonable time (*see* 11 U.S.C. § 1112(b)(2)).

The examples of "cause" set forth in Section 1112(b)(4) (the "Section 1112(b)(4) List") are not exhaustive, however, and it has been established since the adoption of § 1112 that Congress used the word "includes" purposefully and that the grounds listed in the statute are non-exclusive.  The statute reflects Congress' determination that a case should not be permitted to linger in Chapter 11 when there are grounds for conversion [or dismissal].

- 5 -

*In re Ameribuild Constr. Mgmt., Inc.,* 399 B.R. 129, 131-32 (Bankr. S.D.N.Y. 2009) (footnotes omitted). "[The Section 1112(b)(4) List] is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.Rep. No. 95-595, at 405-6 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6362. With respect to the effect of the amendment to Section 1112 brought about by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") on the foregoing law, "[i]t is clear that Congress amended section 1112(b) to make it broader, more strict as to debtors, and more encompassing." *TCR of Denver,* 338 B.R. at 500 (citing applicable legislative history). Accordingly, the rule that the Section 1112(b)(4) List is a non-exclusive list of examples of "cause" continues to be applicable. "Cause" outside of the Section 1112(b)(4) List hereafter is referred to as "Other Cause."

The burden is on the movant to prove Section 1112(b) "cause" by a preponderance of the evidence. *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir. 1994). *Cf. In re Horan,* 304 B.R. 42 (Bankr. D. Conn. 2004) (same burden and standard of proof under 11 U.S.C. § 707(a)). The UST has standing to bring a motion to dismiss or convert under Section 1112. *See* 2 Norton Bankr. L. & Prac. 3d § 26:12 (2010); 5 Norton Bankr. L. & Prac. 3d § 103:1 (2010).

**B.**    **11 U.S.C. § 1112(b)(4)(C)**[9]

    **1.**    **Law**

According to 11 U.S.C. § 1112(b)(4)(C), a chapter 11 case should be dismissed or converted if the debtor's "failure to maintain appropriate insurance . . . poses a risk to the estate or to the

---

[9]    In light of the court's ruling (below) on Section 1112(b)(4)(C) and Other Cause, the court does not address the UST's Section 1112(b)(4)(A) argument.

- 6 -

public." When a debtor owns real property with structures, Section 1112(b)(4)(C) requires that the

debtor maintain property and liability insurance to protect the estate. *Gilroy v. Ameriquest Mortgage*

*Co., et al. (In re Gilroy)*, No. NH 07-054, 2008 WL 4531982 (BAP 1st Cir. Aug. 4, 2008) (failure

to maintain property and liability insurance for five condominiums constitutes cause for dismissal).

### 2.    Facts and Application of Law to Facts

In his Schedules, the Debtor discloses that he owns an interest in a single family home

located at 24 Ebony Lane, Ivoryton, CT (the "Essex Property"). (*See* Doc. I.D. No. 17 (Schedule

A).) The Debtor claims to own the Essex Property in some fashion jointly with his presumed wife.

(*See id.*). At a hearing held on January 28, 2010, the UST requested that the Debtor provide proof

of property and liability insurance that insures the Debtor and his bankruptcy estate for the Essex

Property, including proof of continuous coverage since the Petition Date. (*See* Doc. I.D. No. 256

(1/28/10 Hearing Transcript) at 76-79, 85-86.) The Debtor agreed to provide such documentation

and the court noted that the Debtor was required to provide such documentation by February 19,

2010. (*Id.*) On February 19, 2010, the Debtor filed an alleged Proof of Insurance with the court.

(*See* Doc I.D. No. 287, the "Proof of Insurance.") The court has reviewed the Proof of Insurance and

adopts the UST's analysis and conclusion to the extent set forth as follows.

The Proof of Insurance includes the following:

A.    A binder issued by Liberty Mutual for homeowner insurance for the Essex Property

for the period of October 29, 2009 through October 29, 2010 under which Linda A. Lounsbury (the

Debtor's presumed wife) is the named insured and which bears policy number H32-218-384265-40

(the "Policy"). The Policy also reflects the Office of the United States Trustee as a notice party.

Neither the Debtor nor his estate is named as an insured person.

- 7 -

B.      A two-page declaration of the Policy which reflects property coverage for the Essex

Property and liability coverage effective February 17, 2010 (the "Declaration Page").    The

Declaration Page reflects that Linda A. Lounsbury is the named insured and reflects the Office of

the United States Trustee as a mortgagee.  Neither the Debtor nor his estate is named as an insured

person.

The Proof of Insurance provided by the Debtor does not meet the requirements imposed on

the Debtor at the January 28, 2010 hearing, nor does it comply with 11 U.S.C. §1112(b)(4)(C).  The

Proof of Insurance is not adequate because:

•       it does not provide proof that the Debtor or his bankruptcy estate is an insured person under

        any insurance policy currently in effect; and

•       it does not provide proof that the Debtor or his bankruptcy estate is an insured person under

        an insurance policy currently in effect that provides property and liability insurance for the

        Essex Property.[10]

In his Schedules, the Debtor also states that he is the sole owner of a one-family

condominium located at 7 Jerimoth Drive, Branford, CT (the "Branford Property").  (*See* Doc. I.D.

No. 75 (Amended Schedule A).)[11]    The Debtor testified that, while the Branford Property was

---

[10]       At the Hearing, the Debtor conceded that neither his name nor the estate's appear on
the Proof of Insurance in respect of the Essex Property.  (*See* Oral Record at 4:50:09 *et seq.*)
However, he testified that the UST's issue with the inadequacy of the insurance on the Essex
Property is "easily remedied."  (*See id.*)  Because of the court's determination in Section III, *infra*
that the Debtor is not reasonably likely to confirm a plan within a reasonable time (among other
reasons as set forth below), the Debtor's offer to remedy the insurance situation does not affect the
conclusion reached by the court.

[11]       The Branford Property was not listed in the original Schedule A (*see* Doc. I.D. No.
17).  The Debtor testified that he transferred his interest in the Branford Property on or about
September 5, 2008, prior to filing bankruptcy.  (*See* Oral Record at 5:35:25 *et seq.*; UST Exh. AA.)

insured by the condominium association from the outer wall, it was not subject to other insurance. (*See* Oral Record at 5:52:07 *et seq.*)  Although the Debtor stated that the Branford Property had problems with the roof that resulted in water and mold damage, he testified that additional insurance was unnecessary on the Branford Property as that property currently is locked up and is vacant.  (*See id.* at 5:53:28.)  Consequently, except (perhaps) with respect to exterior walls and premises ("Exterior Coverage"), the Branford Property does not have any applicable policy of insurance currently in effect under which either the Debtor or his estate is a named insured.

### 3.    Conclusion

The Debtor must maintain property and liability insurance coverage so that the assets of the bankruptcy estate are protected against loss.  According to the Proof of Insurance, the Debtor does not have an insurance policy on the Essex Property and  (except, perhaps, for Exterior Coverage) he has no insurance on the Branford Property that would protect the Debtor and his estate against casualty loss and/or liability claims for either property (*e.g.,* a "trip and fall" on the Essex Property or third party property damage claims emanating from conditions inside the Branford Property). Insurance that so insures the Debtor and his estate is required under Section 1112(b)(4)(C).  Failure to provide for such insurance coverage is Section 1112(b)(1) "cause" pursuant to Section 1112(b)(4)(C).  *Cf. Gilroy, supra.*

---

However, the transfer subsequently was rescinded on or about June 1, 2009.  (*See* UST Exh. BB.) Thus, the Debtor's interest in the Branford Property is property of the estate.  *See* 11 U.S.C. § 541(a)(7).  The Debtor testified at the Hearing that he was unsure of his interest in the Branford Property but concedes that he has at least an equitable interest in the Branford Property.  (*See* Oral Record at 5:46:20 *et seq.*)  He stated that he did not know who was the rightful owner of the Branford Property because the property had been embroiled in litigation for about 18 years. (*See id.*)

C. **Other Cause**

The UST has not specifically argued Other Cause in her Motion. However, GRP did argue Other Cause in the GRP Motion To Dismiss which also was heard at the Hearing (and taken under advisement). Accordingly, the Debtor cannot be surprised that the court now considers "Other Cause," *sua sponte*.

1. **Law**

The law with respect to "Other Cause" has been discussed in part II.A, *supra*.

2. **Facts and Application of Law to Facts**

As noted above, the Debtor claims an interest in the Essex Property. In 2002, Bankers Trust Company of California ("Bankers Trust") commenced (Connecticut) state court foreclosure proceedings with respect to a certain first mortgage (the "Mortgage") on the Essex Property. *See Bankers Trust Co. of California, N.A. v. Vaneck*, 96 Conn. App. 390, 391 (opinion by Peters, J.), *cert. denied,* 279 Conn. 908 (2006). Subsequently, the trial court granted Bankers Trust a judgment of foreclosure by sale (the "Foreclosure Judgment"). *See id.* The Debtor appealed the Foreclosure Judgment arguing, among other things, that Bankers Trust did not have standing to foreclose the Mortgage. The Appellate Court rejected that argument, confirmed Bankers Trust's standing and affirmed the Foreclosure Judgment. *See Bankers Trust, supra. See also Chase Home Finance, LLC v. Fequiere*, 119 Conn. App. 570, 2010 WL 653239 (2010).[12] It should be noted that the mortgage

---

[12]    "[Connecticut] General Statutes § 49-17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. *Fleet National Bank v. Nazareth*, [75 Conn. App. 791, 795 (2003)]. The statute codifies the common-law principle of long standing that 'the mortgage follows the note,' pursuant to which only the rightful owner of the note has the right to enforce the mortgage.

debt had been assigned to Wells Fargo Bank (which had filed a motion to be substituted as party

plaintiff in the foreclosure action, "Wells Fargo") some time after the Debtor lost his appeal. (*See*

Doc. I.D. No. 37, Exhibit I at 2 *et seq.*) Subsequently, Wells Fargo assigned the debt to GRP. Wells

Fargo withdrew its motion for substitution and GRP filed its own motion for substitution. (*See id.*)

On February 4, 2008, the Connecticut Superior Court (Holzberg, J.) granted the motion of GRP to

be substituted as party plaintiff in the foreclosure action. Over the objection of the Debtor (who then

was represented by counsel), GRP was substituted as plaintiff and an updated Foreclosure Judgment

was issued. *See Bankers Trust Co. of California, N.A. v. Vaneck*, No. CV-02-0097949-S (order

dated Feb. 4, 2008) (copy of related Case Detail and transcript of related February 4, 2008 hearing

attached as exhibits to Doc. I.D. No. 37). The updated Foreclosure Judgment was made necessary

by the Debtor's bankruptcy filing prior to the foreclosure sale (*see* Chapter 13 Case No. 06-31703

filed on October 5, 2006 (the "Prior Chapter 13 Case")). The Prior Chapter 13 Case was dismissed

before confirmation for failure to file tax returns by an order dated July 26, 2007 (*see* Prior Chapter

13 Case Doc. I.D. No. 43 (Dabrowski, J.)). The Debtor subsequently removed (the "Attempted

Removal") the state court proceedings to the District Court for this district. *See GRP Loan, LLC v.

Vaneck,* No. 3:08-CV-375(WWE), 2008 WL 2902607 (D. Conn. July 24, 2008.) The District Court

---

> *New Milford Savings Bank v. Jajer*, 244 Conn. 251, 266, 708 A.2d
> 1378 (1998); Restatement (Third), Property, Mortgages § 5.4, p. 380
> (1997)." *Bankers Trust Co. of California, N.A. v. Vaneck*, 95
> Conn.App. 390, 391-92, 899 A.2d 41, cert. denied, 279 Conn. 908,
> 901 A.2d 1225 (2006). Our legislature, by adopting § 49-17, has
> "provide[d] an avenue for the holder of the note to foreclose on the
> property when the mortgage has not been assigned to him." *Fleet
> National Bank v. Nazareth*, *supra*, at 795, 818 A.2d 69.

*Id.* at *3 (footnote omitted).

- 11 -

(Eginton, J.) granted GRP's motion to remand for reasons including the *Rooker-Feldman*[13] doctrine

commenting: "The history of this case demonstrates that defendant [Debtor] is attempt[ing] to

relitigate issues already decided by the state trial and appellate courts. This Court is not the

appropriate forum for such a challenge." *Id.* at *1.

This court has consistently held in this case that the state court judgment and later order

conclusively establish (1) an unpaid Mortgage debt at least in the amount of the Foreclosure

Judgment and (2) GRP's standing to file the Lift Stay Motion (subject to proof of relevant post-

judgment and post-substitution order events). (*See* Doc. I.D. Nos. 61, 62, 64; Oral Record of March

26, 2009 hearing (collectively, the "Rulings").) *See also Willow Funding Co., L.P. v. Grencom

Assocs.,* 63 Conn. App. 832 (2001) (judgment of foreclosure by sale a final order even before sale);

*cf. In re Carpenter,* 331 B.R. 529 (Bankr. D. Conn. 2005) (Krechevsky, J.) (same). That fact alone

distinguishes this case from the case upon which the Debtor relies, *In re Parades,* Case No. 09-

22261(RDD) (Bankr. S.D.N.Y.), in which there was no such judgment or order. (A transcript of the

*Parades* bench ruling has been admitted as Debtor's Exhibit A with respect to GRP's Motion To

Dismiss.) As noted above, much of the activity in this case has been comprised of the Debtor's

attacks on the referenced state court judgment and order. (*See, e.g.,* Doc. I.D. Nos. 48, 228; A.P. #

10-3006 (Complaint).) At the Hearing, the Debtor attempted yet again to challenge the state court

judgment and order by attacking GRP's standing (prior to the alleged assignment to DLJ) in this

bankruptcy case. (*See* Oral Record at 6:09:26 *et seq.*) The Debtor also attempted to stay the Lift

Stay Motion proceedings by filing a premature and dilatory appeal of the Rulings and seeking to

_____

[13]      *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)

"enjoin" the relevant matters in this court.  (*See* Doc. I.D. No. 140.)  This court held that such

dilatory appeal did not stay proceedings in this court.  (*See* Doc. I.D. No. 143.)  The Attempted

Removal also is relevant for this purpose.

Using a chapter 11 case as a platform to attack final orders of other courts constitutes Other

Cause.  *See, e.g., In re Springs Hospitality, Inc.,* No. 06-13331 HRT, 2006 WL 2458679, at *7

(Bankr. D. Colo. Aug. 22, 2006) ("Filing the bankruptcy case is . . . merely a way to fight over the

same issues in another location."); *In re Monsour Medical Center, Inc.,* 154 B.R. 201, 208 (Bankr.

W.D. Pa. 1993) ("Review of the facts and circumstances surrounding the case compels the

conclusion that the bankruptcy petition was filed as a litigation tactic . . . in an attempt to reverse the

setbacks . . . suffered in state court.").

### 3.    Conclusion

Based upon the foregoing, the court concludes that Other Cause also exists pursuant to

Section 1112(b)(1).

## III.    Section 1112(b)(1) and (2)

Once the movant has established "cause" (as the UST has done here), the burden shifts to the

Debtor to establish the exceptions provided for by Section 1112(b).  *See* 7 Alan N. Resnick & Henry

J. Sommer, *Collier on Bankruptcy* ¶ 1112.05 (16 ed. rev. 2009) ("*Collier on Bankruptcy*").

> Once "cause" has been demonstrated, the Court must convert or dismiss, unless the
> Court specifically identifies "unusual circumstances . . . that establish that such relief
> is not in the best interest of creditors and the estate."  However, absent unusual
> circumstances, the Court must *not* convert or dismiss a case if (1) there is a
> reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the
> "cause" for dismissal or conversion is something other than a continuing loss or
> diminution of the estate coupled with a lack of reasonable likelihood of
> rehabilitation; and (3) there is reasonable justification or excuse for a debtor's act or
> omission and the act or omission will be cured within a reasonable time.

*In re Orbit Petroleum, Inc.,* 395 B.R. 145, 148 (Bankr. D. N.M. 2008) (citations omitted; emphasis in original). "The Code does not define unusual circumstances; however, courts have determined that it contemplates conditions that are not common in most chapter 11 cases. Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate." *In re Wallace,* No. 09-20496-TLM, 2010 WL 378351, at *7 (Bankr. D. Idaho Jan. 26, 2010) (citation and internal quotation marks omitted). Subsection (A) of Section 1112(b)(2) "requires a finding that a plan will be confirmed within a reasonable period of time." *Collier on Bankruptcy* ¶ 1112.05[2], at 1112-45. That same requirement is subsumed into Section 1112(b) "unusual circumstances." *See In re Wallace, supra* at *6 n.23.

### A.    The Proposed Chapter 11 Plan

On March 2, 2010 (the day of the Hearing and almost eighteen months into this chapter 11 case), the Debtor filed his Plan of Reorganization (Doc. I.D. No. 302, the "Plan"). The Plan was filed without a related disclosure statement. *Cf.* 11 U.S.C. § 1125. The Plan provides for eight classes of claim, seven of which are impaired. Class 2 is comprised of the claim of GRP (the "GRP Claim"). The Debtor testified that his income will not be used to fund the Plan. (*See* Oral Record at 4:32:10 *et seq.*) The Debtor contemplates funding the Plan primarily through two sources: (1) as residual beneficiary of the estate of William F. Van Eck (and, perhaps, another probate estate discussed below); and (2) funds to be generated by MRP Corp., an entity yet to be formed.

### 1.    Estates of William F. Van Eck and Ms. Winkelmann

William F. Van Eck was the late father of the Debtor who passed away almost five years ago. (*See* Oral Record at 5:20:27 *et seq.*) According to the Debtor, he was appointed the trustee of his

father's estate.  Currently, his father's estate is depleted and contains no funds.  (*See* Oral Record at 5:21:22 *et seq.*)[14]

The Debtor contemplates that his father's estate will be funded by monies from his late mother's, Gertrude Joan Van Eck's, bankruptcy estate (*see* Case No. 05-31239).[15]  On May 14, 2008, the Debtor filed a proof of claim as the fiduciary for the Estate of William F. Van Eck in Mrs. Van Eck's bankruptcy estate for the sum of $1,898,020.00.  (*See id.*, Claims Register, POC #6 (the "Proof of Claim").)  On November 8, 2008, the chapter 7 trustee of that bankruptcy estate filed an objection to the Proof of Claim (*see* Case No. 05-31239 Doc. I.D. No. 100) to which the Debtor filed a response (*see id.* Doc. I.D. No. 105).  The executor of the probate estate of Gertrude Van Eck also filed an objection to the Proof of Claim (*see id.* Doc. I.D. No. 122).[16]  The objections to the Proof of Claim and the Debtor's response currently are scheduled to be heard on April 6, 2010 (on a non-evidentiary basis).  (*See id.* Doc. I.D. No. 136.)

On January 28, 2010, the chapter 7 trustee appeared to report on the status of the Gertrude Van Eck case.  At that hearing, the trustee testified that she was holding the sum of $440,000.00 on behalf of Mrs. Van Eck's estate.  (*See* Case No. 05-31239 Doc. I.D. No. 131 (1/28/10 Hearing Transcript) at 7:6-8.)  She further testified that the distribution of such funds was awaiting resolution

---

[14]     The Debtor testified that his father's estate allegedly was looted by the Debtor's brother (among others).  (*See id.*)

[15]     The Debtor testified that he did not believe that any monies are owed to him directly from his mother's estate but instead are owed to his father's estate of which he claims to be the residual beneficiary.  (*See* Oral Record at 5:08:35.)

[16]     The executor of the probate estate of Gertrude Van Eck is Walter Van Eck, the Debtor's brother.  The Debtor testified that because his brother is not fulfilling his duties as executor of that estate, the Debtor will need to institute action to remove his brother as executor of his mother's estate in the future.  (*See* Oral Record at 5:19:18 *et seq.*)

- 15 -

of (1) proceedings in respect of the Proof of Claim and (2) a potential tax claim.[17]  (*See* Case No.

05-31239 Doc. I.D. No. 131 (1/28/10 Hearing Transcript) at 9:17-23.)  The chapter 7 trustee also

contemplates that any necessary taxes and administrative costs will be deducted from the

$440,000.00.  (*See id.* at 9:6-14.)  Upon the resolution of the foregoing issues in the bankruptcy

estate of Gertrude Van Eck, the Debtor testified that funds will go to the estate of his father and the

Debtor will receive such funds as the residual beneficiary of the estate of his father.  Such amounts,

he argues, then will be used to fund his plan.

      The Debtor also testified at the Hearing that an additional source of funding the Plan will be

as the residual beneficiary of the probate estate of Ms. Winkelmann, the Debtor's aunt.  Ms.

Winkelmann died seven to eight years ago and her estate has been in probate in Germany since that

time.  (*See* Oral Record at 5:24:40 *et seq.*)  According to the Debtor, that probate estate has funds

of about $1,780,000.00 and he anticipates that all of those monies will come to him.  (*See id.* at

5:27:43 *et seq.*)  However, the court notes that, in his Schedules, the Debtor listed a debt of

$770,000.00 owed to "Winkelmann Nachlass Hannover."  (*See* Doc. I.D. No. 17 (Schedule F).)

---

[17]    The court notes that on March 4, 2010, the chapter 7 trustee filed that certain Petition for Authority To Employ and Appoint a Tax Attorney (Case No. 05-31239 Doc. I.D. No. 133) to provide the chapter 7 trustee "with an opinion or other determination as to whether there is a tax consequence of any kind to the bankruptcy estate as a result of the liquidation of commercial real estate . . . and the nature and extend of tax liability if one exists."  (*Id.* ¶ 4.)  On March 12, 2010, an order (*see id.* Doc. I.D. No. 140) issued granting the trustee's application to employ.  The Debtor disputes that the bankruptcy estate of Gertrude Van Eck owes any taxes.  (*See* Oral Record at 5:12:25 *et seq.*)  At the January 28, 2010 hearing, during the Debtor's cross-examination of the chapter 7 trustee, the Debtor suggested that the chapter 7 trustee had causes of action that the trustee was not pursuing.  (*See* Case No. 05-31239 Doc. I.D. No. 131 (1/28/10 Hearing Transcript) at 10:5-15.)  The trustee responded that she was "not aware of any other claims that can be pursued."  (*See id.* at 10:11-12.)

Such funds represent monies that were advanced to the Debtor which the Debtor claims would be offset against his inheritance from the Winkelmann estate.  (*See* Oral Record at 5:24:40 *et seq.*)

The court notes that in addition to the 18 months that have already passed without much action on the part of the Debtor to move this case along, creditors of this estate are now expected to await numerous court proceedings before the Plan is even funded by the probate cases.  Further, there is the possibility that the Debtor may not prevail in the court proceedings ahead making this source of income very speculative.  *Cf. In re Rey*, No. 04 B 35040, 2006 WL 2457435, at *7 (Bankr. N.D. Ill. Aug. 21, 2006) ("Without a solid basis for believing litigation is highly likely to generate large sums of money quickly, it cannot provide a sufficiently reliable source of income to support confirmation.").  Given the foregoing, the court cannot deem the Debtor's potential inheritances a "sufficiently reliable" source to fund the Plan.

### 2.    MRP Corp.

The second source of funding of the Plan is contemplated to be income from the "sales of goods from MRP Corporation, a Nevada Corp" ("MRP").[18]  (Plan at 3.)  According to the Debtor, he currently has in his possession assets and machinery that belong to him and other individuals.  (*See* Oral Record at 4:54:43 *et seq.*)[19]  The Debtor proposes to take that equipment and put it to work

---

[18]    The court notes that, although MRP is alleged to be a Nevada corporation, MRP is not a company yet in existence but is contemplated to be formed by the Debtor as one of the sources of funding the Plan.

[19]    The Debtor claims to have in his possession an industrial machine tool which he claims to own and in which no other entity has an interest.  (*See* Oral Record at 4:36:40 *et seq.*)  That machinery, allegedly currently located in Michigan, was released of encumbrances due to the settlement of a proof of claim with Bank of America and release of liens.  (*See* Claims Register, POC # 7; Doc. I.D. Nos. 209, 219.)  That settlement appears to be the only documented progress in this case.  The Debtor also claims that all taxes on the Essex Property have been brought current, but the Debtor appears to be taking credit for third-party payment(s) of such taxes.  (*See* A.P. No. 10-3007;

in a company he will form (*i.e.*, MRP).  MRP will manufacture products and (claims the Debtor) will

be a source of "substantial" revenue to fund the plan.  (*Id.*)  In addition to himself, the Debtor stated

that he is "considering" asking two other individuals to be officers of MRP.  (*See id*. at 4:58:34 *et*

*seq.*)  Any overhead associated with starting up the company will be paid by a joint venture partner,

which will probably be Programmatic Corp., but that decision is "still up in the air."  (*Id*.)  The

Debtor claims that he will not have to raise any capital for MRP as the entity will be housed in an

existing building in Michigan with an existing company that has vacant space and has approximately

80 employees.  (*Id*. at 5:01:31 *et seq.*)   Further, according to the Debtor, MRP will not have to pay

for leasing the vacant space because the existing company will have access to MRP's machinery

when it is not in use by MRP.  (*Id*.)  The Debtor testified that no agreements have been signed in

respect of forming MRP, although there have been "agreements in principle."  (*See* Oral Record at

5:04:17 *et seq.*)

        The court finds this source of income unduly speculative as well.   There has been no

agreements signed, the Debtor is "considering" asking individuals to participate in this new

enterprise and other parts of the business plan are "still up in the air."  *Cf. In re Ralph C. Tyler, P.E.,*

*P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993) (chapter 11 plan disapproved where there was

no "firm financing in place and no evidence of any commitment to such financing ha[d] been

provided to the Court . . . .  Without evidence of a firm commitment of financing, th[e] Plan d[id]

not meet the feasibility requirement.").  After eighteen months, the Debtor's business plan outline

is not nearly good enough.

---

Doc. I.D. No. 298 at 3.)

### 3.   Treatment of GRP Claim

At the Hearing, the Debtor testified that he "feels confident that a majority of the classes and creditors are going to vote for this Plan." (*See* Oral Record at 7:20:29 *et seq.*)  However, the GRP Claim is classified in Class 2 of the Plan and is impaired.  (*See* Plan.)  Accordingly, the holder of the GRP Claim is entitled to vote against the Plan and (at the Hearing) indicated its intention to do so. (*See* Oral Record at 6:39:55 *et seq.*)  With respect to the GRP Claim, the Plan provides for its treatment as follows:

> Class 2 is impaired by this Plan, and the Holder of the Note, to the extent such is secured by mortgage, will be paid by 30-year fixed rate Note of 1.25 points over LIBOR Rate prevailing at the time of the Effective date of the Plan as defined in Article VII, based on a principal balance of The [sic] amount specified by the lesser of the last transfer of the note or as the value of the Property.

(Plan at 3.)  In respect of the GRP Claim, Section 1123(b)(5) provides in pertinent part:

> (b) Subject to subsection (a) of this section, a plan may–
>  . . .
> (5) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .

11 U.S.C.A. § 1123(b) (West 2010) (emphasis added).  *Collier on Bankruptcy* explains the foregoing provision:

> Section 1123(b)(5), which is the same prohibition on residential mortgage modification found in chapter 13, applies in a chapter 11 case only when the debtor is an individual because it is limited to real estate mortgages on residences.  Additionally, it applies only if the real estate mortgage covers only the principal residence and no other property.

*Collier on Bankruptcy* ¶ 1123.02[5], at 1123-22 – 1123-23.  *Cf. In re Silva*, No. 09-29226-BKC-

AJC, 2010 WL 431771 (Bankr. S.D. Fla. Feb. 2, 2010) (In deciding whether the creditor's claim was

protected from modification by Section 1123(b)(5) in the context of a motion to value and bifurcate

creditor's secured claim, the court determined that, because the creditor's claim was the first

mortgage on the subject property and such property was the principal residence of the Debtor, the

mortgage was subject to the anti-modification provisions of Section 1123(b)(5).).

        The Debtor admitted at the Hearing that the Essex Property is his primary residence.  (*See*

Oral Record at 4:30:55 *et seq.*)  The Mortgage covers only the Essex Property.  As noted, the Plan

proposes to modify the GRP Claim by substituting a new 30-year note for the note (the "Note")

secured by the Mortgage.  Such modification expressly is prohibited by Section 1123(b)(5) and

makes the Plan unconfirmable.  *See also* 11 U.S.C. § 1129(a)(1) (plan cannot be confirmed unless

it "complies with the applicable provision of this title [including Section 1123(b)(5)].").  Moreover,

given that the Plan proposes that the Debtor retain the Essex Property, Section 1123(b)(5) limits the

Debtor's treatment of the GRP Claim to the cure of any extant deficiency under the Note on

appropriate terms plus maintenance of the Note's payment schedule on a going-forward basis.  (*See*

11 U.S.C. § 1123(a)(5)(G) ("curing or waiving of any default").)  *Cf. Valente v. Savings Bank of

Rockville*, 34 B.R. 362 (D. Conn. 1983) (holding that the note payment schedule can be reinstated

even after entry of a foreclosure judgment provided a foreclosure of the property has not been ratified

by the court).  Limiting thusly the Debtor's treatment of the GRP Claim (as opposed to substituting

a new 30-year note for the Note) makes the Plan more expensive for the Debtor, thus further

undermining the likelihood of confirmation.

4.    **Conclusion**

For all of the foregoing reasons, this court finds there is not a reasonable likelihood that plan confirmation will take place within a reasonable time (if at all).  Accordingly, the court concludes that the Debtor has not established "unusual circumstances" within the purview of Section 1112(b)(1) or the Section 1112(b)(2) exception.  The court would make that finding and/or draw that conclusion even if the UST bore the risk of non-persuasion on the issue (which the UST does not).

IV.    **DISMISSAL OR CONVERSION**

Once the court determines that "cause" exists (and the Sections 1112(b) exceptions have not been established), Section 1112(b) offers a choice between converting the chapter 11 case to a case under chapter 7 or outright dismissal, "whichever is in the best interests of creditors and the estate," 11 U.S.C.A. § 1112(b) (West 2010).  "Also, instead of either dismissal or conversion, the court may appoint a trustee or an examiner, if such appointment is in the best interests of creditors and the estate."  *Collier on Bankruptcy* ¶ 1112.04[7], at 1112-39 – 1112-40.

> The Code does not define the phrase "best interests of creditors and the estate."  Presumably, the parties will be the best judge of their own best interests, and if all of the parties agree on one course of action, the court should accommodate their desire.

*Id.* at 1112-40 (footnote omitted).

The UST's preferred remedy is dismissal, as is the preference of GRP (to the extent relevant). No one (including the Debtor) spoke for conversion instead of dismissal at the Hearing.[20] Accordingly, the case will be dismissed.

## V.   PREJUDICE (TWO-YEAR BAR)

The UST does not seek prejudice *per se* in her motion.[21]   However, GRP's Motion To Dismiss does seek dismissal with prejudice.   Considering the foregoing, the Debtor cannot claim surprise that prejudice is being considered by the court *sua sponte*.   This court has the power to impose prejudice on its own motion.   *See In re Dilley,* 125 B.R. 189, 198 (Bankr. N.D. Ohio 1991) ("[T]here is nothing in the Code which would preclude sua sponte action by the Court.   Section 349(a) appears to contemplate sua sponte action.   Section 105(a) expressly provides for sua sponte action by the court, even where other parties are expressly charged with raising a matter.").   For the reasons discussed below, the court finds "cause" for doing so now.

Relevant statutes to the issue of dismissal with prejudice are as follows:

Section 109 of the Bankruptcy Code provides in relevant part as follows:

(g) Notwithstanding any other provision of this section, no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the proceeding 180 days if –

---

[20]      At the Hearing, the Debtor stated that "he could not speak" to the issue of conversion to a chapter 7 case because he "had no knowledge of [chapter 7 proceedings]."  (*See* Oral Record at 7:25:32 *et seq.*)  However, the court notes that the Debtor previously was a debtor in a chapter 7 case (*see* Case No. 96-52073) in this district in which he received a chapter 7 discharge (*see id.* Doc. I.D. No. 90).

[21]      The UST, however, requested that any dismissal order impose a condition that the Debtor obtain relief from this court before commencing another bankruptcy proceeding.  (*See* Oral Record at 6:49:14 *et seq.*)  The term "prejudice" as used herein refers to a court-ordered bar against the Debtor's being a debtor in a title 11 case for a set period of time.  (*See* discussion below.)

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title . . . .

11 U.S.C.A. § 109(g) (West 2010).

Section 349 of the Bankruptcy Code provides in relevant part as follows:

(a) *Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C.A. § 349(a) (West 2010) (emphasis added).  Section 105(a) of the Bankruptcy Code

provides in relevant part as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West 2010).

Section 109(g) does not prevent the court pursuant to Section 105(a) and 349(a) from

imposing prejudice on different grounds and for a longer period than those provided for under

Section 109(g).  *See Casse v. Key Bank Nat'l Assoc. (In re Casse),* 198 F.3d 327, 339 (2d Cir. 1999).

*See also Jolly v. Great Western Bank (In re Jolly),* 143 B.R. 383, 387 (E.D. Va. 1992), *aff'd,* 45 F.3d

426 (4th Cir. 1994) ("Thus, this court finds that, so long as the dismissing court finds cause, a

bankruptcy action may be dismissed with prejudice for 180 days, or more, without violating the

terms of § 349(a), or for that matter, § 109(g)." (cited with approval in *Casse*)).

Based upon all the facts and circumstances set forth in the entire record of this case (including those set forth above), the court concludes that there has been here a sufficient pattern of abuse of the chapter 11 process here to constitute "cause" under Section 349(a) to warrant dismissal of this case with prejudice against the Debtor's being a title 11 debtor (including under any alias or any social security number) for a period of two years from the date hereof.   In reaching this conclusion, the court includes a finding (based upon all the history set forth above) that, if this case is dismissed without such prejudice, the Debtor more likely than not will refile in bankruptcy shortly thereafter.   Accordingly, a conforming order dismissing this bankruptcy case shall enter which shall be immediately effective upon issuance.  *See In re Weston*, 101 B.R. 202 (Bankr. E.D. Cal. 1989), *aff'd,* 123 B.R. 466 (B.A.P. 9th Cir. 1991), *aff'd,* 967 F.2d 596 (9th Cir. 1992), *cert. denied,* 506 U.S. 1051 (1993) (Rule 7062 stay does not apply to dismissal orders); Fed. R. Bankr. P. 9014 (making no reference to Rule 7062).

## VI.   <u>IN REM ORDER</u>

In the Lift Stay Motion, GRP sought issuance of an order to the effect that the automatic stay in any future case not affect the Essex Property (*i.e.,* an "*in rem* order").[22]  Because, on the authority discussed above, this court can raise the *in rem* order issue *sua sponte,* the court will so consider the issue.

---

[22]     GRP did not specifically request *in rem* relief in the GRP Motion To Dismiss. However, at both the hearings held on January 28, 2010 and March 2, 2010, GRP's counsel made the request for *in rem* relief several times during their arguments.  Further, GRP did seek *in rem* relief in the Lift Stay Motion.  Therefore, neither the Debtor (nor any other party) can claim surprise that the court considers that request for relief now, *sua sponte*.

Relevant statutes are: Bankruptcy Code §§ 105(a), 349(a), and (arguably) 362(d)(4).  Sections 105(a) and 349(a) have been discussed above.  Section 362(d)(4) was added to the Bankruptcy Code in 2005 by BAPCPA and provides as follows:

> [*In rem* relief is available] with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to *delay, hinder, and defraud* creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order [granting relief from stay] under . . . [Section 362(d)(4)] shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing.

11 U.S.C.A. § 362(d)(4) (West 2010) (emphasis added).

While courts may be inclined to look to case law construing the "hinder, delay or defraud" language found in sections 548(a)(1) and 727(a)(2) for guidance in applying section 362(d)(4), these other provisions are substantively different, as the words in the pertinent phrase in section 362(d)(4) – "delay, hinder and defraud" – are joined by the conjunction "and" rather than "or."  Significantly, at the same time that Congress added section 362(d)(4) as part of the 2005 amendments, it also enacted two other provisions in which the disjunctive form of the "hinder, delay or default" phrase was used, in sections 522(o) and 548(e).  This clearly suggests that, since Congress used the non-exclusive disjunctive form in the other provisions, the language in section 362(d)(4) was deliberately chosen to impose a substantial burden of proof on secured creditors before an *in rem* order may issue.  Given the extraordinary nature of *in rem* relief, extending for a period of two years, it is reasonable that Congress purposely selected this language so that *in rem* orders would be entered only in the rare case in which a creditor can prove that the debtor's filing of the petition was part of a scheme not only to hinder and delay, but also to defraud the creditor . . . .

- 25 -

By requiring that the scheme to hinder, delay and defraud a creditor must involve either an unauthorized transfer of the property or multiple bankruptcy filings affecting the property, section 362(d)(4) addresses conduct that could be indicative of an abusive filing in relation to a real property foreclosure . . . . [T]he filing of multiple bankruptcy cases by the debtor or others holding an interest in the property for the purpose of delaying a foreclosure could be part of the requisite scheme.  But a single case, or even several cases filed over an extended period of time or which do not all affect the property, may fail to support the findings required for the entry of an *in rem* order.

3 *Collier on Bankruptcy,* ¶ 362.05[19][a], at 362-79 – 362-81.  On its face, (unless there is an allegation of transfer of an interest) the required statutory "scheme" must include at least two bankruptcy filings.  *See* 11 U.S.C. § 362(d)(4)(B).  Because of the detailed statutory framework for *in rem* orders set forth in Section 362(d)(4), arguably Congress intended to limit a court's power to issue an *in rem* order pursuant to Sections 105(a) and 349(a) to situations where the Section 362(d)(4) requirements have been satisfied.  Accordingly, the court conducts a Section 362(d)(4) analysis below.

It has not been alleged that the Debtor has engaged in transfers of interests in the Essex Property under Section 362(d)(4)(A).  Accordingly, to obtain the relief requested the movant bears the burden of showing that the various petitions filed by the Debtor are part of a scheme to hinder, delay and defraud Bankers Trust (and its successors in interest) under Section 362(d)(4)(B).  *See In re Blair,* No. 09-76150-ast, 2009 WL 5203738, at *4 (Bankr. E.D.N.Y. Dec. 21, 2009) ("To obtain the relief requested, [the creditor] . . . bears the burden of showing that the various petitions filed by the Debtors are part of a scheme to hinder, delay and defraud [the creditor] . . . under Section 362(d)(4)(B).").  *See also In re Lemma,* 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008) ("[T]he Bank has the burden of establishing that the current filing is part of a scheme, that the scheme involved

the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay

*and* defraud the Bank." (emphasis in original)).

It is true that the Debtor has been a frequent visitor to the bankruptcy court of this district.

However, the Note was not executed and delivered until 2001. With the exception of this pending

case, the only case involving the Debtor thereafter was the Prior Chapter 13 Case which was filed

on October 5, 2006. Again, it is true that the Prior Chapter 13 Case was filed on the eve of a

scheduled foreclosure sale. However, otherwise there is evidence that the case was filed and

prosecuted in good faith. The Debtor was represented by counsel. The Debtor filed a chapter 13

plan on October 23, 2006. He filed an objection to the relevant proof of claim filed by Wells Fargo,

but the objection challenged only the amount of the secured claim, and not Wells Fargo's standing

to assert the claim. (*See* Prior Chapter 13 Case Doc. I.D. No. 30.) The secured creditor responded

to the objection by alleging that the foreclosure judgment had conclusively established the amount

of the challenged charges. (*See* Prior Chapter 13 Case Doc. I.D. No. 40.) On December 21, 2006,

the Debtor filed a First Amended Chapter 13 Plan which proposed payments to the first mortgagee

to cure an estimated $80,000.00 arrearage. (*See* Prior Chapter 13 Case Doc. I.D. No. 33.) Wells

Fargo objected to plan confirmation on the grounds that the deficiency was understated (*see id.* Doc.

I.D. No. 38) and also filed a motion for relief from stay (*see id.* Doc. I.D. No. 34). On February 1,

2007, the Debtor filed a Second Amended Chapter 13 Plan. (*See id.* Doc. I.D. No. 42.) That plan

specifically named Wells Fargo as the secured creditor and proposed to cure a mortgage arrearage

of $123,108.00 at 8% per annum (although with the notation "portions of arrearage contested"). (*See*

*id.*) However, proceedings on confirmation of the Second Amended Plan were terminated when, on

- 27 -

July 26, 2007, the case was dismissed on the motion of the chapter 13 trustee for failure to file or prepare required tax returns.  (*See id.* Doc. I.D. Nos. 26, 43.)

The Debtor might well have lost on his claim objection in the Prior Chapter 13 Case based on the *Rooker-Feldman* doctrine. *Cf. GRP Loan, LLC v. Vaneck,* 2008 WL 2902607, at *1 ("The history of this case demonstrates that defendant [Debtor] is attempt[ing] to relitigate issues already decided by the state trial and appellate courts.")  However, at that point in time, the applicability of the doctrine was a much fairer subject for litigation than it is now after Judge Holzberg's and Judge Eginton's decisions.  Nor is the court persuaded by the dismissal for failure to file tax returns or, on this record, his apparent use of an alias in that case (*see* part VII and note 25, *infra*).  Accordingly, the court concludes that the Prior Chapter 13 Case has sufficient indicia of good faith filing and prosecution such that this court is not persuaded that the Prior Chapter 13 Case was part of a scheme to hinder, delay and defraud the mortgagee within the purview of Section 364(d)(4).

Given the foregoing conclusion, the question remains whether a court has power to issue an *in rem* order pursuant to Sections 105(a) and 349(a) when the requirements of Section 362(d)(4) have not been satisfied.  However, the court does not reach that issue here.  That is because the court concludes that entry of an *in rem* order is not appropriate based on the facts presented here even if Section 362(d)(4) does not limit the court's power so to issue an *in rem* order.

VII.    <u>**CONCLUSION**</u>

For the reasons set forth above, the court concludes that the case shall be dismissed with prejudice as set forth above.  That conclusion renders the Matters (except for the Motion To Dismiss and the Objection) taken under advisement moot, as well as moots most of the Other Matters

continued on a TBA basis.[23]  However, the court retains jurisdiction over: (1)  the issue of whether

any or all adversary proceedings currently pending with respect to this chapter 11 case (the

"Adversary Proceedings") also should be dismissed in connection with such case dismissal;[24] and

(2) any motion (filed within twenty-eight days from the date hereof) in respect of obtaining a "red

ribbon certificate" from the Social Security Administration (*cf.* Doc. I.D. No. 236) with respect to

confirming the Debtor's correct Social Security number, and any proceedings or matters proceeding

from such motion as the court may deem appropriate.[25]

       It is **SO ORDERED**.

Dated: March 16, 2010                                        BY THE COURT

 

**Lorraine Murphy Weil**
**Chief United States Bankruptcy Judge**

---

[23]      Mooted matters will be so indicated by appropriate docket entries.

[24]      In the interests of according due process to the Debtor, that issue will be raised
pursuant to one or more orders to show cause to be issued by this court subject to notice and a
hearing.

[25]      It should be noted that the Debtor has filed at least one title 11 case in this district
under the name "Jan Herman Van Eck." (*See* Prior Chapter 13 Case Doc. I.D. No. 1.)  It also should
be noted that the Debtor filed the Adversary Proceedings as plaintiff under the name "Jan Herman
Van Eck."  (*See* A.P. No. 10-3006 Doc. I.D. No. 1; A.P. No. 10-3007 Doc. I.D. No. 1.)